1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

16

17

| | | |
|---|---|---|
| ANNA SHERMAN, | ) | 1:06-cv-00896-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER ON SOCIAL |
| v. | ) | SECURITY COMPLAINT (DOC. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | ORDER DIRECTING REMAND PURSUANT |
| Commissioner of Social | ) | TO SENTENCE FOUR of 42 U.S.C. § |
| Security, | ) | 405(g) |
| | ) | |
| Defendant. | ) | ORDER DIRECTING THE CLERK TO |
| | ) | ENTER JUDGMENT FOR PLAINTIFF ANNA |
| | ) | SHERMAN AND AGAINST DEFENDANT |
| | | MICHAEL J. ASTRUE |

18      Plaintiff is proceeding in forma pauperis and with counsel

19   against the Commissioner of Social Security. Pursuant to 42

20   U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review

21   of a final decision of the Commissioner[1] denying an application

22   for Supplemental Security Income (SSI) benefits under Title XVI

23   of the Social Security Act (the Act). Pursuant to 28 U.S.C. §

24   636(c)(1), the parties have consented to the jurisdiction of the

25   Magistrate Judge to conduct all proceedings in this matter,

26

27      [1]Michael J. Astrue is substituted for his predecessor as Commissioner of
the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P.
25(d)(1).

28

1

including ordering the entry of final judgment.[2] The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

II. <u>Procedural Summary</u>

Plaintiff filed for SSI benefits on May 13, 2003, alleging disability due to a pinched sciatic nerve, headaches, dizziness, blackouts, and pain; her application was denied initially and upon reconsideration. (A.R. 55-58, 11-17, 33-36, 38-43.) On December 1, 2005, a hearing before Administrative Law Judge (ALJ) Michael J. Haubner was held; Plaintiff was represented by an attorney and appeared and testified. (<u>Id.</u> 14.)

On January 20, 2006, the ALJ issued a decision determining that Plaintiff was not disabled. (A.R. 14-17.) The ALJ determined that although Plaintiff had serous impairments of right sciatica radiculopathy and asthma, her impairments did not meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, and to sit, stand and/or walk six hours in an eight-hour workday with only occasional stooping and crouching; and Plaintiff had to avoid concentrated exposure to pulmonary irritants and temperature extremes. Plaintiff could perform her past relevant work as a fast food worker and fast food crew leader; alternatively, using Rule 202.18 as a framework for decision, considering that Plaintiff was a younger individual

---

[2] The Honorable Anthony W. Ishii ordered the matter assigned to a Magistrate Judge on October 27, 2006; on May 7, 2007, the matter was assigned to the undersigned Magistrate Judge.

1  with limited education but with the capacity to perform light
2  work, Plaintiff was not disabled. (A.R. 17.)

3      Plaintiff's request for reconsideration was denied on May
4  17, 2006. (A.R. 5-7.) Plaintiff filed her complaint here on July
5  12, 2006; briefing commenced with the filing of Plaintiff's brief
6  on January 15, 2007; after Plaintiff filed a memorandum in
7  opposition, Plaintiff filed a timely reply on February 28, 2007.

8      III. <u>Standard and Scope of Review</u>

9      Congress has provided a limited scope of judicial review of
10 the Commissioner's decision to deny benefits under the Act. In
11 reviewing findings of fact with respect to such determinations,
12 the Court must determine whether the decision of the Commissioner
13 is supported by substantial evidence. 42 U.S.C. § 405(g).
14 Substantial evidence means "more than a mere scintilla,"
15 <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a
16 preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10
17 (9th Cir. 1975). It is "such relevant evidence as a reasonable
18 mind might accept as adequate to support a conclusion."
19 <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record
20 as a whole, weighing both the evidence that supports and the
21 evidence that detracts from the Commissioner's conclusion; it may
22 not simply isolate a portion of evidence that supports the
23 decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.
24 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  It
25 is immaterial that the evidence would support a finding contrary
26 to that reached by the Commissioner; the determination of the
27 Commissioner as to a factual matter will stand if supported by
28 substantial evidence because it is the Commissioner's job, and

1  not the Court's, to resolve conflicts in the evidence. <u>Sorenson</u>
2  <u>v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

3       In weighing the evidence and making findings, the
4  Commissioner must apply the proper legal standards. <u>Burkhart v.</u>
5  <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
6  review the whole record and uphold the Commissioner's
7  determination that the claimant is not disabled if the
8  Commissioner applied the proper legal standards, and if the
9  Commissioner's findings are supported by substantial evidence.
10 <u>See,</u> <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d
11 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If
12 the Court concludes that the ALJ did not use the proper legal
13 standard, the matter will be remanded to permit application of
14 the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th
15 Cir. 1987).

16      IV. <u>Disability</u>

17      In order to qualify for benefits, a claimant must establish
18 that she is unable to engage in substantial gainful activity due
19 to a medically determinable physical or mental impairment which
20 has lasted or can be expected to last for a continuous period of
21 not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
22 claimant must demonstrate a physical or mental impairment of such
23 severity that the claimant is not only unable to do the
24 claimant's previous work, but cannot, considering age, education,
25 and work experience, engage in any other kind of substantial
26 gainful work which exists in the national economy. 42 U.S.C.
27 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th
28 Cir. 1989). The burden of establishing a disability is initially

4

on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d
1273, 1275 (9th Cir. 1990).

The regulations[3] provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 2) whether solely on the basis of the medical
evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. <u>See</u> 20 C.F.R. § 416.920.

V. <u>Plaintiff's Credibility</u>

Plaintiff challenges the ALJ's findings concerning her

_____

[3]All references are to the 2006 version of the Code of Federal Regulations unless otherwise stated.

credibility, arguing that the ALJ failed to consider her persistent efforts to obtain relief from her pain and asthma, which supported her credibility, and further that the ALJ improperly concluded that Plaintiff had not been compliant with her prescribed medical treatment.

Plaintiff testified that she had an eleventh-grade education, could fix simple meals twice a day, do laundry, do dishes daily, make her bed daily and change sheets, use a telephone, attend church weekly, go out to eat three times a month, watch TV three times weekly for a total of about ten hours, read the Bible every third day for an hour, but she did not drive, ride public transportation, do yard work, sweep, or vacuum. (A.R. 394, 398-402.)

Plaintiff testified that she was fully compliant with all her treatment recommendations and medications. (A.R. 403.) She got regular medical appointments every three months and kept those appointments. (A.R. 405.) She smoked about ten cigarettes a day until a month before the hearing but quit because of her asthma; her doctors had never told her to quit before she did. (A.R. 402-03.) She quit because of her asthma, and when asked if she quit on her own or got a patch, she testified that she just quit. (A.R. 403.) Her impairments rendered her disabled. (A.R. 403.) Besides her regular appointments, she had gone in to the doctor on an emergency basis (either to the emergency room of the doctor's office) three times in "this year." (A.R. 405.) Her last hospitalization overnight (more than twenty-four hours) just for breathing problems had been in October 2004. (A.R. 405.)

Plaintiff testified that pain in her right side, back, down

6

1  her leg, and in her neck was constantly at a level of eight on a
2  scale of one to ten; she had gone to the emergency room for pain
3  last in June 2005. (A.R. 406-07.) Her pain and fatigue caused her
4  to lose attention or have difficulty focusing for more than two
5  hours; she lay down about once daily for fatigue or being out of
6  breath for about an hour. (A.R. 407-08.)

7       The ALJ concluded that Plaintiff's non-severe carpal tunnel
8  and severe impairments of right sciatica radiculopathy and asthma
9  could reasonably be expected to produce some of the symptoms she
10  alleged, but the degree of limitation was not supported by the
11  objective evidence and was not credible when evaluated under Soc.
12  Sec. Ruling 96-7p. (A.R. 14-15.)

13       The court in Orn v. Astrue, 495 F.3d 625, 635 (9th Cir.
14  2007), summarized the pertinent standards for evaluating the
15  sufficiency of an ALJ's reasoning in rejecting a claimant's
16  subjective complaints:

17          An ALJ is not "required to believe every
            allegation of disabling pain" or other non-exertional
18          impairment. See Fair v. Bowen, 885 F.2d 597, 603 (9th
            Cir.1989). However, to discredit a claimant's testimony
19          when a medical impairment has been established, the ALJ
            must provide " 'specific, cogent reasons for the
20          disbelief.' " Morgan, 169 F.3d at 599 (quoting Lester,
            81 F.3d at 834). The ALJ must "cit[e] the reasons why
21          the [claimant's] testimony is unpersuasive." Id. Where,
            as here, the ALJ did not find "affirmative evidence"
22          that the claimant was a malingerer, those "reasons for
            rejecting the claimant's testimony must be clear and
23          convincing." Id.
                Social Security Administration rulings specify the
24          proper bases for rejection of a claimant's testimony.
            See S.S.R. 02-1p (Cum. Ed.2002), available at Policy
25          Interpretation Ruling Titles II and XVI: Evaluation of
            Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R.
26          96-7p (Cum. Ed.1996), available at 61 Fed.Reg.
            34,483-01 (July 2, 1996). An ALJ's decision to reject a
27          claimant's testimony cannot be supported by reasons
            that do not comport with the agency's rules. See 67
28          Fed.Reg. at 57860 ("Although Social Security Rulings do

                                    7

not have the same force and effect as the statute or
regulations, they are binding on all components of the
Social Security Administration, ... and are to be
relied upon as precedents in adjudicating cases."); see
<u>Daniels v. Apfel</u>, 154 F.3d 1129, 1131 (10th Cir.1998)
(concluding that ALJ's decision at step three of the
disability determination was contrary to agency
regulations and rulings and therefore warranted
remand). Factors that an ALJ may consider in weighing a
claimant's credibility include reputation for
truthfulness, inconsistencies in testimony or between
testimony and conduct, daily activities, and
"unexplained, or inadequately explained, failure to
seek treatment or follow a prescribed course of
treatment." <u>Fair</u>, 885 F.2d at 603; see also <u>Thomas</u>, 278
F.3d at 958-59.

Here, the ALJ mentioned several reasons for his findings,
including the objective medical evidence; Plaintiff's poor work
history (only three full substantial gainful activity years in
her life of forty-two years); evidence that contradicted her
claim of being fully compliant with her treatment and
prescriptions, including Plaintiff's having missed appointments
in May, July, and February 2005 as well as Plaintiff's continuing
to smoke cigarettes against medical advice until one month before
the hearing; evidence that contradicted Plaintiff's claim that no
one told her to quit until a month before the hearing;
Plaintiff's testimony that she had only three non-scheduled
doctor interventions in the past year and no hospitalizations in
the past fourteen months for breathing problems, which
contradicted her attorney's argument that she met the listing for
asthma attacks; and Plaintiff's activities of daily living,
including living alone with a disabled husband, feeding and
caring for three dogs and a bird, taking care of her personal
needs, preparing food, washing dishes, doing laundry, grocery
shopping, making the bed, changing sheets, paying bills in cash,

attending church, and going out to eat three times a month. (A.R. 14-15.)

Several of the reasons given by the ALJ are not challenged by Plaintiff and further appear to be legally adequate and supported by substantial evidence. A claimant's extremely poor work history shows that she has little propensity to work and negatively affects her credibility regarding her inability to work. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff's earnings record showed sufficient earnings for only 1998, 1999, and 2000; very small amounts were earned in several other years. (A.R. 60.) See, 20 C.F.R. §§ 416.965, 416.974.00. The Court defers to the ALJ's credibility determination in this respect.

The objective medical treatment records reveal an inconsistency between Plaintiff's testimony that smoking cessation had not previously been recommended and Plaintiff's medical records, which revealed multiple recommendations by treating sources to cease smoking before the hearing that was held in December 2005. (A.R. 200 [Dr. Kolker of the Family Healthcare Network noted a history and present experience of asthma and recommended that Plaintiff quit smoking during a visit in July 2003]; A.R. 192, 194 [Dr. Kolker recommended that she stop smoking during two follow-up visits in August 2003 for back pain]; A.R. 269-70 [physician's assistant Karen Townsend, PA-C, of the Family Healthcare Network, recommended that Plaintiff follow up with Dr. Kolker later in the week and emphasized that Plaintiff was to discontinue smoking because it was not helping with her symptoms of coughing, wheezing, and shortness of

1  breath]; A.R. 295 [at a follow-up visit to Dr. Kolker to rule out
2  asthma in April 2004, Plaintiff stated that her asthma was fairly
3  bad, and Dr. Kolker noted that Plaintiff was still smoking, did
4  want to quit, and would be given medication for it]; A.R. 314
5  [Plaintiff admitted smoking half a pack daily to physician's
6  assistant David Larios at Family Healthcare Network on May 12,
7  2005].

8      In this circuit, valid criteria for evaluating subjective
9  complaints include weak objective support for claims and
10 inconsistent reporting. Tidwell v. Apfel, 161 F.3d 599, 601-02
11 (9th Cir. 1998). Inconsistent statements are matters generally
12 considered in evaluating credibility and are properly factored in
13 evaluating the credibility of a claimant with respect to
14 subjective complaints. Thomas v. Barnhart, 278 F.3d 947, 958-59
15 (9th Cir. 2002). An ALJ may consider inconsistencies either in the
16 claimant's testimony or between the claimant's testimony and the
17 claimant's conduct, daily activities, or work record; and
18 testimony from physicians and third parties concerning the
19 nature, severity, and effect of the symptoms of which the
20 claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th
21 Cir. 2002). Although the inconsistency of objective findings with
22 subjective claims may not be the sole reason for rejecting
23 subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792
24 (9th Cir. 1997), it is one factor which may be considered with
25 others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004);
26 Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999). The ALJ
27 may consider whether the Plaintiff's testimony is believable or
28 not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

1    In addition, it is established that a claimant's ability to

2 engage in activities of daily living to the extent that he or she

3 spends a substantial part of his day engaged in pursuits

4 involving the performance of physical functions that are

5 transferable to the work setting is relevant; a specific finding

6 as to this fact may be sufficient to discredit a claimant's

7 allegations. <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169

8 F.3d 595, 600 (9th Cir. 1999). Substantial evidence supported the

9 ALJ's finding that Plaintiff had admitted to doing a significant

10 amount of activities of daily living, including feeding and

11 caring for several animals, caring for all her personal needs,

12 preparing food, washing dishes, doing laundry, shopping, making

13 the bed, and so forth. (A.R. 15, 394, 398-402.)

14    Plaintiff challenges the finding that she had not been fully

15 compliant with treatment and prescriptions. The ALJ found that

16 she had missed appointments in 2005. (A.R. 15.) The record

17 supports the ALJ's determination. (A.R. 250 [patient did not show

18 for appointment at Family Healthcare Network on February 5, 2005,

19 and the appointment was rescheduled]; A.R. 312 [Plaintiff failed

20 to show on May 19, 2005, for her appointment at Family Healthcare

21 Network, and again on July 6, 2005, for a follow-up appointment].

22 Plaintiff had specifically testified that she followed all her

23 treatment, and she got regular medical treatment, visiting her

24 doctor every three months and keeping those appointments that

25 year. (A.R. 403, 405.) The ALJ was entitled to consider the

26 inconsistency presented by the medical record and Plaintiff's

27 statement that she kept all her appointments and was in full

28 compliance with her program of treatment.

1      The ALJ also found that Plaintiff had continued to smoke in
2  spite of her asthma complaints and against medical advice until
3  one month before the hearing. The record supports this finding.
4  (A.R. 192 [Dr. Kolker advised Plaintiff to stop smoking in August
5  2003]; A.R. 202-03 [at annual an examination on July 28, 2005, at
6  Family Healtcare Network, family nurse practitioner Anita De La
7  Vega, who noted asthma, encouraged Plaintiff to stop smoking and
8  gave her information concerning a smoking cessation program;
9  Plaintiff indicated that she could consider it]; A.R. 314, 295,
10 269-70, 187 [notes from May 2005, April and November 2004, and
11 September 2003 indicating that Plaintiff was still smoking].

12     However, to the extent that the ALJ relied on Plaintiff's
13 continuing to smoke as a failure to follow prescribed treatment,
14 and mischaracterized the record concerning her hospitalizations,
15 the matter will be discussed below

16     Thus, in summary, several of the reasons relied on by the
17 ALJ to reject the full extent of Plaintiff's credibility are
18 legally sufficient and supported by substantial evidence.

19     Plaintiff argues that the ALJ failed to consider Plaintiff's
20 persistent efforts to obtain treatment for her pain and asthma,
21 evidence which was consistent with her claims of disability and
22 which supported her credibility. Plaintiff points to the medical
23 record, which reflects generally frequent and regular visits from
24 September 2002 through November 2005 to her treating physician
25 and a hospital for complaints concerning her asthma and pain as
26 well as other maladies, including but not limited to gastric
27 problems and infections. (A.R. 151-200, 214-39, 240-99, 300-380.)
28 Where the evidence supporting an ALJ's rejection of a claimant's

1  credibility is substantial, and where it demonstrates that the
2  ALJ did not arbitrarily reject the Plaintiff's testimony, the
3  finding will be upheld even though the finding is not as
4  extensive as possible and does not consider all possible factors.
5  Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (where the
6  AlJ's conclusion was based on the claimant's daily activities,
7  treating therapist's notes, and good response to treatment);
8  Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (upholding an
9  ALJ's rejection of a claimant's credibility based on medical
10 evidence, daily activities, and Plaintiff's testimony that a
11 medication aided intermittent pain). Further, it appears that the
12 evidence was subject to interpretation. It is established that to
13 the extent that medical evidence is inconsistent or conflicting,
14 it is the responsibility of the ALJ to resolve any conflicts.
15 Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999); Saelee
16 v. Chater, 94 F.3d 520, 522 (9th Cir. 1996); Matney on Behalf of
17 Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

18      Here, the ALJ was entitled to consider not only the evidence
19 of Plaintiff's attempts to obtain treatment, but also other,
20 independent evidence that detracted from Plaintiff's credibility
21 with respect to the extent of her subjective symptoms. Separate
22 and apart from any failure of Plaintiff to comply with a
23 treatment recommendation to stop smoking, the ALJ gave numerous
24 clear and convincing reasons, supported by substantial evidence,
25 that supported his conclusions regarding Plaintiff's credibility
26 concerning allegedly disabling subjective complaints. Although in
27 the present case there might have been factors supporting
28 Plaintiff's credibility, and even though one aspect of a factor

13

relied upon by the ALJ may not have been fully supported by, and
articulated in findings in, the record (as will be discussed
below), the ALJ nevertheless articulated clear and convincing
reasons, supported by substantial evidence, for discrediting
Plaintiff's subjective complaints of pain. Cf. Batson v.
Commissioner of the Social Security Administration, 359 F.3d
1190, 1196 (9th Cir. 2004).

    VI. Failure to Comply with Treatment

    Plaintiff argues that the ALJ's findings regarding her
failure to quit smoking were inadequate; Plaintiff contends that
the ALJ was not permitted to make the finding that she had failed
to comply with her treatment because there was no substantial
evidence in the record that a direction to quit smoking was
clearly expected to restore Plaintiff's capacity to engage in any
substantial gainful activity or cure Plaintiff's asthma.

    The ALJ made the challenged finding in connection with his
conclusion that the degree of limitation which Plaintiff claimed
resulted from her subjective complaints was not supported by
objective medical evidence and was not credible. As is previously
noted, other legally sufficient and supported reasons were given
for this credibility finding. Thus, the Court will not conclude
that the ALJ's overall findings concerning Plaintiff's
credibility were erroneous.

    However, in connection with Plaintiff's other contention
concerning the ALJ's erroneous conclusion concerning the
frequency of Plaintiff's hospitalizations for asthma and the
related finding that Plaintiff's impairments did not meet or
medically equal the listing for asthma (to be discussed below),

14

1  Defendant argues that any error that the ALJ made is harmless
2  because in any event, Plaintiff did not comply with her treatment
3  and thus was not disabled from her impairment of asthma.

4       In connection with this contention, the Court notes that the
5  ALJ did not state that the reason for determining that
6  Plaintiff's asthma did not meet or equal a listing was
7  Plaintiff's smoking, a failure to comply with treatment; rather,
8  the ALJ concluded that Plaintiff clearly did not meet the
9  requirements of § 3.03B, and pulmonary function testing did not
10 meet the listing level. (A.R. 15.)

11      This Court is limited to reviewing the findings of the ALJ
12 and to reviewing the specific facts and reasons that the ALJ
13 asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)
14 (holding that the ALJ's statement of what evidence was not
15 credible and what evidence suggested the lack of credibility
16 sufficed as specific findings or reasons for rejecting a
17 claimant's testimony, but holding that the mere presence of
18 evidence in the record that would support an ALJ's conclusions,
19 in the absence of the ALJ's discussion thereof, was
20 insufficient). The district court cannot make findings for the
21 ALJ. Id. A district court cannot affirm the judgment of an agency
22 on a ground the agency did not invoke in making its decision.
23 Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001).

24      Here, there is evidence in the record that suggests that
25 Plaintiff's smoking contributed to her asthma symptoms. (A.R.
26 281-82, 226-27.) However, the ALJ apparently did not consider or
27 make findings concerning Plaintiff's asthma treatment, the
28 anticipated effect of smoking cessation, and other matters

relevant to a conclusion that Plaintiff was not disabled solely because she smoked cigarettes. The Court will not make a determination regarding what the ALJ might conclude regarding this matter; rather, as will be discussed below, the Court will return the matter to the ALJ for further findings with respect to whether or not Plaintiff's asthma met or was medically equal to a listing; on remand the agency can develop the record and make any appropriate findings concerning Plaintiff's compliance with her treatment regimen.

In connection with this matter, the Court takes note of the pertinent legal standards governing the question of whether disability may be denied on the ground of failure to comply with treatment. Title 20 C.F.R. § 416.930 provides:

(a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work, or, if you are a child, if the treatment can reduce your functional limitations so that they are no longer marked and severe.
(b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or blind or, if you are already receiving benefits, we will stop paying you benefits.
(c) Acceptable reasons for failure to follow prescribed treatment. We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failure to follow prescribed treatment. The following are examples of a good reason for not following treatment:
(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
(2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
(3) Surgery was previously performed with unsuccessful results and the same surgery is again

16

being recommended for the same impairment.
          (4) The treatment because of its enormity
(e.g. open heart surgery), unusual nature (e.g., organ
transplant), or other reason is very risky for you; or
          (5) The treatment involves amputation of an
extremity, or a major part of an extremity.

    In Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995), the

Court reviewed the required procedure for an ALJ considering

whether noncompliance affects the validity of subjective

complaints:

          ... However, before basing a denial of benefits
     on noncompliance, the ALJ must "examine the medical
     conditions and personal factors that bear on
     whether [a claimant] can reasonably remedy"
     his impairment and must make specific findings.
     Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993);
     accord Preston v. Heckler, 769 F.2d 988, 990 (4th Cir.1985)
     (The ALJ "must develop a record establishing by
     substantial evidence that the claimant's impairment
     is reasonably remediable by the particular individual
     involved, given ... her social or psychological situation,
     and that [she] lacks good cause for failing to follow
     a prescribed treatment program."). Also "[e]ssential
     to a denial of benefits pursuant to Section 404.1530
     is a finding that if the claimant followed her prescribed
     treatment she could return to work." Rousey v. Heckler, 771
     F.2d 1065, 1069 (7th Cir.1985).

In Byrnes, the court applied the principles to hypoglycemic

reactions, which were subjective phenomena not subject to

objective measurement, and it concluded that the ALJ's findings

were inadequate:

          Because the ALJ made no finding that "[Byrnes]
     was not complying with [his] prescribed treatment
     program[,] that [he] lacked good cause for failing
     so to comply," or that if he stopped smoking he
     could return to work, we "decline to review the
     record to ascertain whether substantial evidence
     might support these findings not made." Rousey, 771
     F.2d at 1069; Preston, 769 F.2d at 990; see generally
     Cequerra v. Secretary of Health and Human Services,
     933 F.2d 735, 738 (9th Cir.1991) ("A reviewing court
     can evaluate an agency's decision only on the grounds
     articulated by the agency.").

Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995). The court in

17

1    <u>Byrnes</u> thus specifically held that before denying benefits based

2    on noncompliance, the ALJ must examine the medical conditions and

3    personal factors that bear on whether a claimant can reasonably

4    remedy his impairment, and the ALJ must make specific findings.

5    <u>Byrnes v. Shalala</u>, 60 F.3d 639, 641 (9th Cir. 1995).

6         The Court further notes that in Soc. Sec. Ruling 82-59, the

7    SSA states its policy, which is that an individual who would

8    otherwise be found to be disabled but who fails without

9    justifiable cause to follow treatment prescribed by a treating

10   source which the SSA determines can be expected to restore the

11   individual's ability to work cannot by virtue of such failure be

12   found to be under a disability. <u>Id.</u> p. 1. The SSA may make a

13   determination that an individual has failed to follow prescribed

14   treatment only where all of the following conditions exist: 1)

15   The evidence establishes that the impairment precludes engaging

16   in any substantial gainful activity; 2) the impairment has lasted

17   or is expected to last for twelve continuous months from onset or

18   is expected to result in death; 3) treatment which is clearly

19   expected to restore capacity to engage in any substantial gainful

20   activity or gainful activity has been prescribed by a treating

21   source, and 4) the evidence of record discloses that there has

22   been refusal to follow prescribed treatment. <u>Id.</u> p. 1. The SSA

23   will determine whether the medical evidence demonstrates that the

24   prescribed treatment will restore ability to work. <u>Id.</u> p. 2. The

25   claimant or beneficiary should be given an opportunity to express

26   fully the specific reasons for not following the prescribed

27   treatment, and the record should reflect the reason/s; it may be

28   necessary to re-contact the treating source for substantiation or

18

1  clarification. Failure to follow a prescription is justifiable if

2  an individual is unable to afford prescribed treatment which he

3  or she is willing to accept but for which free community

4  resources are unavailable, or if any duly licensed treating

5  medical source who has treated the claimant advises against the

6  treatment. Id. p. 4. The stated reasons are not exhaustive. Id.

7  p. 4.

8       VII. Plaintiff's Asthma

9       Plaintiff argues that the ALJ erred in concluding that

10  Plaintiff's asthma did not meet or equal Listing § 3.03.

11       Plaintiff testified that she used inhalers three times a

12  week, a nebulizer once a week, and was sometimes given Prednisone

13  once or twice a year; besides her regular appointments every

14  three months, she had gone on an emergency basis either to the

15  emergency room or her doctor's office three times in the past

16  year because of asthma. (A.R. 403-05.) When asked when she had

17  been hospitalized overnight just for breathing problems and had

18  to be admitted for more than twenty-four hours, Plaintiff

19  testified that it had been the previous year in October. (A.R.

20  405.)

21       Plaintiff and Defendant agree that Plaintiff was

22  hospitalized at Sierra View District Hospital three different

23  times due to asthma attacks (asthma exacerbation with

24  bronchitis): 1) October 21, 2004 through October 23, 2004 (A.R.

25  232-36); 2) October 23, 2004 through October 26, 2004 (A.R. 226-

26  31 [after discharge, Plaintiff went home, began smoking again,

27  then returned and was re-admitted]); and 3) October 15, 2005

28  through October 18, 2005 (A.R. 345-72).

The ALJ stated in pertinent part:

> At the hearing, claimant's representative argued that
> the claimant meets 3.03 (asthma attacks). However,
> claimant testified that she's had only 3 non-scheduled
> doctor interventions in the past year, and no
> hospitalizations in the past 14 months for breathing
> problems. Therefore, she clearly does not meet the
> requirements of 3.03B.
> ....
> I note that the medical evidence of record does
> confirm asthma, but the pulmonary function test
> does not meet listing level (Exhibit 2F, p. 15).

(A.R. 15.)

The ALJ's references were to 20 C.F.R. § 404, subpart P,
Appendix 1, § 3.00, Respiratory System, and § 3.03, Asthma.
Section 3.03 provides in pertinent part:

> 3.03 Asthma. With:
>
> A. Chronic asthmatic bronchitis. Evaluate
> under the criteria for chronic obstructive pulmonary
> disease in 3.02A;
> Or
> B. <u>Attacks (as defined in 3.00C), in spite of
> prescribed treatment and requiring physician
> intervention, occurring at least once every
> 2 months or at least six times a year. Each
> in-patient hospitalization for longer than 24 hours
> for control of asthma counts as two attacks,
> and an evaluation period of at least 12
> consecutive months must be used to determine
> the frequency of attacks.</u> (Emphasis added.)

Section 3.00(A) provides in part:

> Some disorders, such as bronchiectasis, cystic
> fibrosis, and asthma, can be associated with
> intermittent exacerbations of such frequency
> and intensity that they produce a disabling
> impairment, even when pulmonary function during
> periods of relative clinical stability is relatively
> well-maintained.
> ....
>
> <u>Also, the asthma listing specifically includes
> a requirement for continuing signs and symptoms
> despite a regimen of prescribed treatment.</u>
> (Emphasis added.)

Section 3.00(C) provides:

        C. Episodic respiratory disease. When a
respiratory impairment is episodic in nature,
as can occur with exacerbations of asthma,
cystic fibrosis, bronchiectasis, or chronic
asthmatic bronchitis, the frequency and intensity
of episodes that occur despite prescribed treatment
are often the major criteria for determining the
level of impairment. Documentation for these
exacerbations should include available hospital,
emergency facility and/or physician records indicating
the dates of treatment; clinical and laboratory
findings on presentation, such as the results
of spirometry and arterial blood gas studies (ABGS);
the treatment administered; the time period required
for treatment; and the clinical response. Attacks
of asthma, episodes of bronchitis or pneumonia
or hemoptysis (more than blood-streaked sputum),
or respiratory failure as referred to in paragraph
B of 3.03, 3.04, and 3.07, are defined as
prolonged symptomatic episodes lasting one
or more days and requiring intensive treatment,
such as intravenous bronchodilator or antibiotic
administration or prolonged inhalational bronchodilator
therapy in a hospital, emergency room or equivalent
setting. Hospital admissions are defined as inpatient
hospitalizations for longer than 24 hours. The medical
evidence must also include information documenting
adherence to a prescribed regimen of treatment as well
as a description of physical signs. For asthma, the medical
evidence should include spirometric results obtained
between attacks that document the presence of baseline
airflow obstruction. (Emphasis added.)

        With respect to establishing an impairment within a listing,

it is Plaintiff's burden to establish that his impairment met a

listing. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Mere

diagnosis of a listed impairment is not sufficient to sustain a

finding of disability; there must also be the findings required

in the listing. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir.

1990); 20 C.F.R. § 416.925(d). The Plaintiff has the burden of

establishing a prima facie case of disability, which requires a

showing that the Plaintiff not only has a listed impairment, but

also of the twelve-month continuous duration requirement. Roberts

v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995) (cert. denied,

1 <u>Roberts v. Chater</u>, 517 U.S. 1122 (1996); <u>see</u>, 42 U.S.C. §

2 1382c(a)(3)(A); 20 C.F.R. §§ 416.909, 416.920(d). Generally,

3 specific medical findings are needed to support the diagnosis and

4 the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d),

5 416.925(c). One who claims upon review that the ALJ erred in not

6 determining and finding that a claimant's combined impairments

7 met a listing must offer a theory of how the impairments combined

8 to equal a listed impairment and point to evidence that shows

9 that his combined impairments equal a listed impairment. <u>Lewis v.</u>

10 <u>Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001). The Commissioner is not

11 required to state why a claimant failed to satisfy every

12 different section of the listing of impairments; rather, it is

13 sufficient to evaluate the evidence upon which the ultimate

14 factual conclusions are based. Otherwise, an undue burden would

15 be put on the social security disability process. <u>Gonzales v.</u>

16 <u>Sullivan</u>, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

17    Here, the ALJ's finding regarding Plaintiff's lack of

18 hospitalizations was erroneous and not supported by substantial

19 evidence. The nature and extent of Plaintiff's hospitalizations

20 are critical factors in a determination of whether Plaintiff's

21 impairments met or medically equaled the listed impairment of

22 asthma. Here, Plaintiff's three hospitalizations within a year

23 and further within fourteen months of the hearing merited full

24 consideration of whether Plaintiff's impairment met or equaled a

25 listing. It does not appear that the ALJ engaged in the required

26 consideration of this evidence or analysis of whether or not

27 Plaintiff's symptoms persisted despite adherence to a prescribed

28 regimen of treatment or made appropriate findings concerning

22

1 Plaintiff's compliance with treatment.

2       VIII. <u>Remedy</u>

3       A district court is authorized to affirm, modify, or reverse
4 a decision of the Commissioner of Social Security, with or
5 without remanding the cause for a rehearing. 42 U.S.C. § 405(g).
6 The decision whether to remand a matter pursuant to sentence four
7 of § 405(g) or to order immediate payment of benefits is within
8 the discretion of the district court. <u>Harman v. Apfel</u>, 211 F.3d
9 1172, 1178 (9th Cir. 2000). Generally, an award of benefits is
10 directed where no useful purpose would be served by further
11 administrative proceedings, or where the record has been
12 thoroughly developed. <u>Varney v. Secretary of Health and Human</u>
13 <u>Services</u>, 859 F.2d 1396, 1399 (9th Cir. 1988). No remand will be
14 ordered where 1) there are no outstanding issues that must be
15 resolved before a proper disability determination can be made,
16 and 2) it is clear from the administrative record that the ALJ
17 would be required to award benefits if wrongfully rejected
18 evidence were credited. <u>Varney v. Secretary of Health and Human</u>
19 <u>Services</u>, 859 F.2d 1396, 1401 (9th Cir. 1988).

20       Here, the ALJ should reconsider at step three whether
21 Plaintiff's impairments, including but not limited to,
22 Plaintiff's asthma, meet or medically equal a listing; and should
23 consider to the extent appropriate whether or not Plaintiff's
24 symptoms persisted despite compliance with or adherence to a
25 prescribed regimen of treatment; and any other matters necessary
26 and appropriate to a determination of whether or not Plaintiff is
27 or was disabled, including any reconsideration deemed necessary
28 or appropriate by the Commissioner in light of the foregoing

1  decision.

2      Based on the foregoing, the Court concludes that the ALJ's
3  decision was not supported by substantial evidence in the record
4  as a whole and was not based on proper legal standards.

5      Accordingly, it IS ORDERED that

6      1. Plaintiff's social security complaint IS GRANTED, and

7      2. The matter IS REMANDED pursuant to sentence four of 42
8  U.S.C. § 405(g) for further consideration, consistent with this
9  decision, of Plaintiff's status as disabled, including whether or
10 not Plaintiff's impairments met or equaled a listing, and, to the
11 extent appropriate, Plaintiff's credibility and residual
12 functional capacity, whether Plaintiff could perform her past
13 work, and whether on the basis of the Plaintiff's age, education,
14 work experience, and residual functional capacity, Plaintiff
15 could perform any other gainful and substantial work within the
16 economy; and

17     3. Judgment BE ENTERED for Plaintiff Anna Sherman and
18 against Defendant Michael J. Astrue.

19 IT IS SO ORDERED.

20 **Dated:    November 27, 2007**              **/s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28